1

**NICHOLAS & TOMASEVIC, LLP**
Craig M. Nicholas (SBN 178444)
Alex Tomasevic (SBN 245598)
225 Broadway, 19th Floor
San Diego, California 92101
Tel: (619) 325-0492
Fax: (619) 325-0496
Email: cnicholas@nicholaslaw.org
Email: atomasevic@nicholaslaw.org

**WINTERS & ASSOCIATES**
Jack B. Winters, Jr. (SBN 82998)
Georg M. Capielo (SBN 245491)
Sarah Ball (SBN 292337)
8489 La Mesa Boulevard
La Mesa, California 91942
Tel: (619) 234-9000
Fax: (619) 750-0413
Email: jackbwinters@earthlink.net
Email: gcapielo@einsurelaw.com
Email: sball@einsurelaw.com

Attorneys for Plaintiff THURMA J. KELLEY,
and on Behalf of the Class

2

3

4

5

6

7

8

9

10

11

12

13

14

## UNITED STATES DISTRICT COURT

15

## CENTRAL DISTRICT OF CALIFORNIA

16

17

18

19

20

21

22

23

24

25

26

27

28

| THURMA J. KELLEY Individually, and on Behalf of the Class,<br><br>                                    Plaintiff,<br><br>        vs.<br><br>COLONIAL PENN LIFE INSURANCE COMPANY, a Pennsylvania Corporation<br><br>                                    Defendant. | Case No.:<br><br>**CLASS ACTION COMPLAINT FOR:**<br><br>**(1)  DECLARATORY RELIEF OR JUDGMENT (CAL CIV CODE §§ 1060, *ET SEQ.*);**<br><br>**(2)  DECLARATORY RELIEF OR JUDGMENT (28 U.S.C. 2201, *ET SEQ.*);**<br><br>**(3)  BREACH OF CONTRACT;**<br><br>**(4)  UNFAIR COMPETITION (BUSINESS AND PROFESSIONS CODE §§ 17200, *ET SEQ.*)**<br><br>**(5)  FINANCIAL ELDER ABUSE**<br><br>**DEMAND FOR JURY TRIAL** |
|---|---|

CLASS ACTION COMPLAINT

Plaintiff THURMA J. KELLEY, individually, and on behalf of the class defined below, makes the following allegations against Defendant COLONIAL PENN LIFE INSURANCE COMPANY ("Colonial Penn") as follows.

## I.    NATURE OF THE CASE

1.    Colonial Penn refuses to comply with mandatory provisions of the California Insurance Code as well as California common law regulating the lapse and termination of life insurance policies.

2.    Since January 1, 2013, Colonial Penn and other related entities have systematically and purposely failed to provide certain classes of policy owners, insureds, assignees and others, proper notices of pending lapse or termination. Colonial Penn has refused to provide required grace periods.  It has also failed to notify thousands of policy owners of their right to designate someone to receive critical notices and information regarding life insurance, despite being required to do so on an annual basis.  Each of these important safeguards are required by, among other sources, California Insurance Code Sections 10113.71 and 10113.72.[1] California law requires strict compliance with these safeguards and Colonial Penn has refused and continues to refuse to comply.

3.    As a result, Colonial Penn has failed to properly administer policies, has failed to properly evaluate the status of payments due under policies and failed to properly pay claims to beneficiaries for policies lapsed or terminated for nonpayment of premium.  Indeed, from January of 2013 until the present, thousands of policy owners and beneficiaries have lost, and continue to lose, the benefit, value and security of their life insurance; have been, and continue to be, forced into unnecessary reinstatements; and in many instances have lost all reasonable access to any insurance at all. Ultimately, Colonial Penn has robbed thousands of their customers and

---

[1] Unless otherwise stated, all references to "Section 10113.71" and/or "10113.72" refer to California Insurance Code Sections 10113.71 and/or 10113.72.  Sometimes these will be collectively referred to as "The Statutes."

beneficiaries of the investment in such policies, charged improper amounts for reinstatement, and denied policy benefits as well as the security intended to be provided from such insurance.

4.     The injury to Colonial Penn's customers and beneficiaries continues today, with policyholders currently paying unnecessary or inflated premiums, or unknowingly suffering under improper forced "reinstatements" which diminish the value or conditions of the policies.  And there are numerous policyholders whom Colonial Penn told have no insurance, but whose policies are, unbeknownst to them, still in force and in some situations with benefits being owed and unpaid.

5.     The Statutes were enacted to protect Californians and others, primarily seniors and the ill, as well as the intended beneficiaries of such individuals.  The Statutes were designed to prevent or lessen the possibility of unintended or uninformed loss of valuable and necessary life insurance for just one missed payment or resulting from a policyholders' physical or mental infirmity. The Statutes were written to codify existing law regarding lapse and termination of life insurance, which required strict compliance with applicable law and policy provisions before termination takes effect. The Statutes were also intended to standardize the procedures used in all life insurance when a policyholder misses a premium payment and when an insurer attempts to apply provisions of the policy that allow for lapse and termination.  These rules are also consistent with the strong public policy to give all policy owners and insureds mechanisms to allow for secondary notices of lapse and termination and overall to prevent unintended forfeitures.

6.     The Statutes were also designed specifically to deal with the unique nature of life insurance and the adhesive nature of insurance contracts as well as the strong public policy to protect consumers of insurance.  When a potential claim for benefits arises, the policy owner and party responsible for payment of premiums is often the insured, and due to their death, is no longer available to explain the circumstances related to any potential lapse or termination of coverage.   The

CLASS ACTION COMPLAINT

Legislature also recognized that the beneficiary is often unaware of the circumstances related to any lapse of coverage. Rather, the insurer is fully in control of the documentation and requirements for termination of coverage. As such, California requires strict compliance with all statutory and contractual provisions governing termination of an otherwise in-force policy regardless of the nonpayment of premium. In other words, no lapse or termination for failure to pay a premium is effective, and the policy remains in force even if premiums are unpaid, unless and until all statutory and contractual provisions are satisfied.

7. Plaintiff is the victim of Colonial Penn's failures. Plaintiff, on behalf of herself and others similarly situated brings this action to recover for the injuries and damages resulting from these violations. Plaintiff also requests injunctive relief intended to ensure Colonial Penn's future compliance with these important consumer safeguards and to prevent the ongoing violation of these important statutes.

## II.    **PARTIES**

8. Plaintiff THURMA J. KELLEY is an individual and the owner of and person insured by the life insurance policy at issue.

9. Defendant Colonial Penn Life Insurance Company is a Pennsylvania Company doing business in California. It is registered to do business in California and is licensed by the California Department of Insurance to sell life insurance here in California. Colonial Penn is one of the largest sellers of life insurance in California by market share. From 2013 until the present Colonial Penn was the insurer responsible for administering and honoring the subject Policy.

10. Upon information and belief, Colonial Penn does or has done business under and through, or issued policies under, many names, brands, or affiliates over the years. This lawsuit and the class definition below concerns *all* of Colonial Penn's policies that it has ever been responsible for, in whole or in part, that have ever been in force at any time on January 1, 2013 or thereafter, and under all applicable names, brands, trade names, and affiliates.

CLASS ACTION COMPLAINT

### III.    JURISDICTION AND VENUE

11.    This Court has original jurisdiction pursuant to 28 U.S.C. § 1332, including under the Class Action Fairness Act.  The matter in controversy, exclusive of interest and costs, exceeds the sum or value of $75,000, and is between citizens of different States.  Also, the matter or controversy is a putative class action with over 100 class members and with over $5 million in controversy.

12.    Venue is proper in the Central District of California pursuant to 28 U.S.C. Section 1391(b) through (d), because Defendant is authorized to conduct business in this District and has intentionally availed itself of the laws and markets within this District; does substantial business in this District; and is subject to personal jurisdiction in this District.  Plaintiff also resides in this District.

### IV.    THE ENACTMENT AND APPLICABILITY OF
### INSURANCE CODE SECTIONS 10113.71 AND 10113.72

13.    In 2012, after extensive and open hearings and public consideration, including with Colonial Penn and all other major insurance companies doing business in California, the California Legislature enacted Insurance Code Sections 10113.71 and 10113.72, which instituted procedural requirements for the termination and lapse of life insurance policies.  The Statutes were written to avoid unintended forfeitures of life insurance policies primarily being suffered by the elderly and the ill.   The Legislature found that there was a significant problem in California with the elderly abruptly losing insurance because they happened to miss a premium payment despite having faithfully and timely paid for many years.

14.    Sections 10113.71 and 10113.72, in addition to other statutory provisions and laws in effect as of January 1, 2013, mandate that every life insurance policy in or governed by California law, including policies that have issued, been delivered, renewed, reinstated, converted or otherwise become subject to the jurisdiction of California, shall contain a 60-day grace period and that the policy shall remain in force during the grace period.  Cal. Ins. Code § 10113.71(a).

CLASS ACTION COMPLAINT

15.     The provisions further require that before an individual life insurance policy governed by California law is lapsed or terminated for nonpayment of premium, a 30-day written notice of pending lapse or termination must be mailed not only to the policyholder, but also to any additional person who had been designated to receive such notice, as well as any person having any interest in the policy.  Cal. Ins. Code § 10113.72(c).

16.     The provisions also mandate that the insurer, on an annual basis, as well as during any application process, notify the policy owner of his or her right to designate additional notice recipients.

17.     Finally, the statutes mandate that no lapse or termination is effective unless all the provisions are strictly complied with.

18.     The provisions are applicable individually and severally to all life insurance policies governed by California law from and after January 1st, 2013 until the present.

19.     More specifically, Section 10113.71 reads as follows:

**§ 10113.71 Grace Period; Notice of pending lapse and termination of policy; Mailing requirement**

(a)  Every life insurance policy issued or delivered in this state shall contain a provision for a grace period of not less than 60 days from the premium due date. The 60-day grace period shall not run concurrently with the period of paid coverage. The provision shall provide that the policy shall remain in force during the grace period.

(b) (1) A notice of pending lapse and termination of a life insurance policy shall not be effective unless mailed by the insurer to the named policy owner, a designee named pursuant to Section 10113.72 for an individual life insurance policy, and a known assignee or other person having an interest in the individual life insurance policy, at least 30 days prior to the effective date of termination if termination is for nonpayment of premium.

(2) This subdivision shall not apply to nonrenewal.

(3) Notice shall be given to the policy owner and to the designee by first-class United Sates mail within 30 days after a premium is due and unpaid.  However, notices made to assignees

pursuant to this section may be done electronically with the consent of the assignee.

(c) For purposes of this section, a life insurance policy includes, but is not limited to, an individual life insurance policy and a group life insurance policy, except where otherwise provided.

Next, Section 10113.72 says:

**§ 10113.72 Right to designate person to receive notice of lapse or termination of policy for nonpayment of premium; Right to change designation; Notice of lapse or termination**

(a) An individual life insurance policy shall not be issued or delivered in this state until the applicant has been given the right to designate at least one person, in addition to the applicant, to receive notice of lapse or termination of a policy for nonpayment of premium. The insurer shall provide each applicant with a form to make the designation. That form shall provide the opportunity for the applicant to submit the name, address, and telephone number of at least one person, in

addition to the applicant, who is to receive notice of lapse or termination of the policy for nonpayment of premium.

(b) The insurer shall notify the policy owner annually of the right to change the written designation or designate one or more persons. The policy owner may change the designation more often if he or she chooses to do so.

(c) No individual life insurance policy shall lapse or be terminated for nonpayment of premium unless the insurer, at least 30 days prior to the effective date of the lapse or termination, gives notice to the policy owner and to the person or persons designated pursuant to subdivision (a), at the address provided by the policy owner for purposes of receiving notice of lapse or termination. Notice shall be given by first-class United States mail within 30 days after a premium is due and unpaid.

20.    These Statutes are regulatory in nature and contain no grandfather provisions limiting their application only to policies first issued or delivered after January 1, 2013. Rather, they apply to all policies still *in existence* as of January 1, 2013 and thereafter.

21.    These provisions were intended to standardize the procedures and notices used by life insurers to terminate policies. The Statutes further codified long-standing California law and policy regarding the State's desire to protect policyholders and beneficiaries from loss of insurance resulting from the failure, e.g.,

to pay a premium after years of timely payments. These provisions, individually and collectively, were intended to apply to policies in force as of January 1, 2013 and thereafter, including those policies that would come within the jurisdiction of the state and regardless of the date of any original issuance.

22.     The principal supporters of the legislation were groups representing the elderly and the retired as well as constituents dealing with health concerns. There was no substantive opposition to the legislation during its drafting.  Rather, the insurance industry supported these new provisions and accepted that the goal and purpose of the legislation was legitimate and in the best interest of their policyholders and beneficiaries.  Prior to enactment, there was never a public or private dispute that the enactment of provisions codifying a contractual right to a 30-day written notice, a 60-day grace period, and an annual right to designate was within the proper exercise of California's regulatory authority.   Furthermore, after repeated review, it was determined that enactment of these provisions would have no substantial fiscal or economic ill effect.  It was determined that these Statutes support a strong public policy to safeguard consumers' investment in life insurance, and the safety blanket that insurance provides.

## V.     COLONIAL PENN'S VIOLATIONS OF LAW

23.     In 2012, Colonial Penn was made fully aware of the drafting and enactment of these provisions.  And through its own lobbying groups and regulatory advisors, Defendant understood how and in what fashion The Statutes would apply and specifically that the Statutes would apply to all policies in force as of January 1st, 2013.

24.     Despite early knowledge of the Statutes and their mandates, since January 1, 2013, Colonial Penn has failed to comply with the Statutes.

25.     Colonial Penn's failure to comply with these provisions has resulted in, amongst other impacts, the improper lapse, termination, and/or forced reinstatement of policies, the loss of the capacity of policyholders to be insured, the denial of actual

claims, and the loss of millions, or perhaps billions, in insurance benefits that Defendant has illegally retained. Plaintiff and her family have suffered and continue to suffer various forms of injury and loss including injury from an improper lapse, improper requirement of reinstatement and termination, and from Defendant's failure to reinstate coverage or otherwise pay the benefits due.

26.     Plaintiff is informed and believes that the failure of Defendants to comply with these statutes as well as the resulting injuries and damages continue to this day for many Californians.

## VI.    PLAINTIFF'S POLICY, LAPSE, TERMINATION, REINSTATEMENT, AND DENIAL OF HER CLAIM

27.     In or before 2001, Thurma J. Kelley purchased, from or in California, a life insurance policy ( sometimes "The Policy" or the "Subject Policy") from Colonial Penn Life Insurance Company, (Policy No. FT2780319B).   Plaintiff is both the insured and the policyowner.   As of January 1st, 2013, and at all times thereafter, Defendant Colonial Penn was responsible for all contractual and statutory obligations associated with The Policy.

28.     Plaintiff is informed and believes that a full and complete copy of The Policy is attached as Exhibit "A."  The Policy was purchased in California, was issued and delivered in California, and thereafter was continuously renewed and kept in force through the payment of premiums pursuant to the terms of The Policy. All premiums were paid from California and, as such, The Policy was and continues to be governed by the laws of California including but not limited to The Statutes and the statutory provisions of the California Insurance Code pursuant to California Ins. Code Section 41 et. al.  The purpose of this policy was to insure the life of Plaintiff Thurma J. Kelley.

29.     The value of The Policy is $25,000 or more. The terms of The Policy state: We will pay the Death Benefit Amount less any Accelerated Benefit amount paid if the insured dies while the certificate is in force, subject to the terms of this

certificate. Ex. A. For the first 5-year term, the premium payment was $28.20 per month, with increases every 5 years. In 2017 the monthly premium was $59.45. Plaintiff stayed current on The Policy and faithfully paid the premiums every month for over 15 years, and well beyond the enacting of The Statutes by the California legislature in 2013. Premiums were fully paid in 2013, 2014, 2015, 2016, and part of 2017.

30.     Despite the application of California law, at no time during 2014, 2015, 2016, or 2017 did Colonial Penn advise Plaintiff of her right to designate another recipient of important policy notices, of her right to a 30-day notice prior to any effective lapse or termination, or of her right to a 60 day grace period. Rather, at various times, Colonial Penn misstated the actual form and type of notice required by law and the terms of the policy. Colonial Penn also withheld and concealed from Plaintiff its previous failure to comply with those provisions. Plaintiff is informed and believes that these failures were part of a general business practice of Colonial Penn of ignoring and misapplying Sections 10113.71 and 10113.72.

31.     After making premium payments consistently for over 15 years, one payment was apparently missed in or around August of 2017. Plaintiff, upon realizing the payment was missed, contacted Colonial Penn, was informed of the full amount needed to keep the policy in force, and sent two months of payment in late August 2017. Colonial Penn kept Plaintiff's money for a couple of weeks, then decided to send the money back, and informed Plaintiff that her policy had lapsed and was terminated. The termination was illegal and ineffective. Further, Colonial Penn informed Plaintiff they were not willing to reinstate The Policy without a significant increase in premium. The refusal to reinstate The Policy was improper and illegal as The Policy had not been legally terminated.

32.     Defendant did not comply with The Statutes and there is no evidence showing otherwise. Plaintiff has no record of receiving notices of any missed premium payment in 2017 or of any impending lapse or the triggering of any

mandatory 60-day grace period or of any right to designate an individual to receive notices. At all times, Plaintiff was financially capable of paying all premiums due and was desirous of maintaining the policy.

33. At no point relevant to this matter has Colonial Penn complied with or attempted to comply with the provisions of Sections 10113.71 or 10113.72 regarding The Policy. Colonial Penn had not provided any notice of pending lapse or termination. No notice was provided for the alleged lapse or termination of The Policy in 2016. Colonial Penn did not provide a 60-day grace period as required by Section 10113.71(a) or the terms of The Policy.

34. Colonial Penn also violated Section 10113.72 by failing to provide notice of a right to designate an alternative notice recipient. As such, all attempted notices were per se ineffective and The Policy remains in force.. Finally, despite the lack of strict compliance with these provisions, Colonial Penn has refused to reinstate or continue coverage without a significantly increased premium. This termination violated the terms of the California Insurance Code, but also constituted a material breach of the contract.

35. Due to these violations of The Statutes, alone or together, the lapse and termination of The Policy was void and ineffective. As such, the Policy remains in force. The failure to comply with these provisions also was, and remains, a material breach of The Policy.

## VII. CLASS ACTION ALLEGATIONS

36. Colonial Penn has not, since at least January 1, 2013, properly complied with the provisions of Insurance Code Sections 10113.71 and/or 10113.72. Since that time, Colonial Penn has failed and continues to fail to provide these protections to policy owners, assignees and their beneficiaries.

37. Colonial Penn's handling of The Policy is and was consistent with Colonial Penn's standardized policies and procedures. Colonial Penn has

CLASS ACTION COMPLAINT

systematically failed to provide a class of policy owners the protections afforded by Sections 10113.71 and 10113.72.

38.    Plaintiff brings this action on behalf of all members of the following proposed class and sub-class:

**The Class:**

All past, present, and future owners or beneficiaries of Colonial Penn's individual life insurance policies in force on or after January 1, 2013 and governed by Sections 10113.71 and/or 10113.72, where the policies underwent or will undergo lapse, termination, and/or reinstatement without Colonial Penn first providing written notice of and an actual 60-day grace period, a 30-day notice of pending lapse and termination, and/or an annual notice of a right to designate at least one other person to receive notice of lapse or termination of a policy for nonpayment of premium.

**The Elder Abuse Sub-Class:**

All members of the Class defined above who were also 65 years of age or older at the time the policy lapsed or terminated.

39.    Subject to additional information obtained through further investigation and discovery, the foregoing class definition may be expanded or narrowed by amendment or amended complaint or at the time of moving for class certification. Specifically excluded from the proposed Class is the Judge assigned to this action, and any member of the Judge's immediate family.

40.    Colonial Penn's conduct has imposed a common injury and/or harm on all class members. Colonial Penn has acted, and has refused to act, on grounds generally applicable to the class members, which makes final injunctive relief with respect to each claim appropriate.

41.    Plaintiff will and does faithfully represent and is a member of the Class and Sub-Class.

42.    ***Numerosity.***  The members of the Class and sub-class are so numerous that their individual joinder is impracticable.  Plaintiff is informed and believes, and on that basis alleges, that the proposed Class and sub-class contains thousands and perhaps tens-of-thousands of members.  The precise number of members is unknown

to Plaintiff. The true number of members is known or ascertainable by Colonial Penn, as are their identities. Thus, Class members may be notified of the pendency of this action by first class mail, electronic mail, and/or by published notice.

43. ***Existence and Predominance of Common Questions and Answers of Law and Fact***. There is a well-defined community of interest in the questions and answers of law and fact involved affecting class members. The questions and answers of law and fact common to the class and sub-class predominate over questions and answers affecting only individual class members, including, but not limited to, the following:

a. Whether Sections 10113.71 and 10113.72, in whole or in part, apply to Colonial Penn's life insurance policies.

b. Has Colonial Penn violated and does it continue to violate the provisions of Sections 10113.71 and 10113.72?

c. Whether Colonial Penn's life insurance policies have been ineffectively lapsed or terminated or subsequently been unnecessarily modified through reinstatement.

d. Whether Defendant is required to provide grace periods, timely and proper written notices of pending lapse or pending termination, and to provide policyholders a right to designate as set forth in Section 10113.72.

e. Should the Court invalidate improper lapses, terminations, and/or reinstatements of policies that resulted from Defendant's failure to comply with the Insurance Code?

f. Should Defendant be required to make payments to beneficiaries of Policies where the insured has died and the policy was lapsed or terminated in violation of Sections 10113.71 or 10113.72?

g. Whether Defendant knew or should have known that their conduct was directed to one or more persons aged 65 or older.

44. ***Typicality.*** Plaintiff's claims are typical of the claims of the members of the Class and sub-class because Plaintiff and each member of the Class and sub-class were victims of the same statutory violations. Further, Plaintiff's claims are typical of the claims of her fellow Class members, which all arise from the same operative facts involving the Defendant's unlawful violations of Sections 10113.71 and 10113.72.

45. ***Adequacy of Representation.*** Plaintiff will fairly and adequately protect the interests of the Class and sub-class. Plaintiff has retained counsel highly experienced in handling class action litigation, including that which involves consumer protection from unfair insurance business practices, and Plaintiff intends to prosecute this action vigorously. Plaintiff has no interest adverse or antagonistic to that of the Class.

46. ***Superiority***. A class action is a superior method for the fair and efficient adjudication of this controversy. The damages or other financial detriment suffered by individual Class members are relatively small compared to the burden and expense that would be expended by individual litigation of their claims against Defendant. It would thus be virtually impossible for Class members, on an individual basis, to obtain effective redress for the wrongs done to them. Furthermore, even if Class members could afford such individualized litigation, the court system could not. Individualized litigation would create the danger of inconsistent or contradictory judgments arising from the same set of facts. Individualized litigation would also increase the delay and expense to all parties and the court system from the issues raised by this action. The class action device provides the benefit of adjudication of these issues in a single proceeding, economies of scale, and comprehensive supervision by a single court, and presents no unusual management difficulties under the circumstances. Moreover, many Class members remain unaware of their rights and without this Class action, would remain unaware of their rights and benefits.

47.     In the alternative, the Class and sub-class may also be certified because:

(a)     The prosecution of separate actions by individual Class members would create a risk of inconsistent or varying adjudication with respect to individual Class members that would establish incompatible standards of conduct for the Defendant;

(b)     The prosecution of separate actions by individual class members would create a risk of adjudications with respect to them that would, as a practical matter, be dispositive of the interests of other Class members not parties to the adjudications, or would substantially impair or impede their ability to protect their interests; and/or

(c)     Defendant has acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final declaratory and/or injunctive relief with respect to the members of the Class as a whole.

48.     Unless the Class (including the sub-class) is certified, Defendant will retain monies received because of its conduct taken against the class members and Plaintiff.   Unless a Class-wide injunction is issued, Defendant will continue to commit the violations alleged and members of the Class will continue to be harmed.

49.     Plaintiff knows of no difficulty likely to be encountered in the management of this litigation that would preclude its maintenance as a Class Action. Because the action is brought as a Class Action, the Court need only apply a single set of California laws as they relate to Defendant's violation of Sections 10113.71 and 10113.72.

50.     Plaintiff has incurred, and will incur, expenses for attorney's fees and costs in bringing this action.   These attorney's fees and costs are necessary for the prosecution of this action and will result in a benefit to each of the members of the class.

## VIII.  <u>FIRST CAUSE OF ACTION</u>

### FOR DECLARATORY JUDGMENT OR RELIEF
#### (CAL CIV. CODE § 1060 *ET SEQ.*)

**(By Plaintiff, individually and on Behalf of the Class and Sub-Class)**

51.     Plaintiff incorporates by reference each and every allegation contained above.

52.     Under California law, "[a]ny person interested under a written instrument…or under a contract, or who desires a declaration of his or her rights or duties with respect to another…may, in cases of an actual controversy relating to the legal rights and duties of the respective parties," may maintain a complaint or cross complaint "for a declaration of his or her rights and duties."  Furthermore, he or she "may ask for a declaration of rights or duties, either alone, or with other relief, and the court may make a binding declaration of these rights or duties, whether or not further relief is or could be claimed at the time."  (Cal. Civ. Code § 1060.)

### A.     Basis for Relief

53.     On January 1, 2013, the California Insurance Code was amended by Sections 10113.71 and 10113.72. The provisions of The Statutes were immediately, and thereafter, read into all in-force policies regardless of the date of issuance.

54.     These statutes and amendments to the California Insurance Code were intended to and do regulate the lapse and termination procedures arising from the nonpayment of premiums which may occur from the date of enactment and thereafter.

55.     The amendments were not intended to relieve or waive a policyholder's continuing obligation to pay premiums but operated to keep the policy in force until the policy was properly lapsed or terminated consistent with the statutory provisions which were incorporated into the terms of the policy by law.  Each of these statutory requirements were intended to stand alone.

56.     Forfeiture provisions for nonpayment of premium for life insurance policies are strictly construed against lapse or termination and California law

disfavors forfeiture of insurance. Forfeitures "are often the means of great oppression and injustice" and "the courts should be liberal in construing the transaction in favor of avoiding a forfeiture." (*Ins. Co. v. Norton* (1978) 96 U.S. 234, 242.) "Forfeiture of a policy will be avoided on any reasonable showing." *Klotz v. Old Line Life Ins. Co. of Amer.,* 955 F.Supp. 1183, 1188 (N.D. Cal. 1996).

**B.    There is an Actual Controversy Requiring a Declaration of Rights and Duties**

57.    An actual controversy has arisen and now exists between Plaintiff and Colonial Penn concerning their respective rights and duties under the California Insurance Code and the Policy.  Plaintiff contends Sections 10113.71 and 10113.72 apply to the Subject Policy as well as all of Colonial Penn's California life insurance policies in force as of or after January 1, 2013, including any policies that were renewed in California on or after January 1, 2013.  Plaintiff also contends these Statutes govern the manner and procedure in which life insurance policies can legally be lapsed or terminated as of January 1, 2013, and thereafter.  Colonial Penn contends and acts as if the Statutes do not apply to these policies.

58.    Plaintiff desires a judicial determination of rights and duties, and a declaration or judgment that Sections 10113.71 and 10113.72 applied as of January 1, 2013, to Colonial Penn's California policies in force as of or at any time after January 1, 2013, including the Subject Policy.

59.    A judicial declaration would advise insureds and their beneficiaries like Plaintiff of their rights, and would advise Colonial Penn of its duties to Plaintiff and to Class members concerning policyholders' rights to designate individuals to receive notices of pending lapse and termination and the right to receive notice of, and the ability to properly utilize, the legally required grace period.  A judicial declaration is also necessary to determine the validity of any unnecessary reinstatements obtained, to determine whether policies were legally in force at the

1  times of deaths of insureds, and to determine whether beneficiaries were wrongfully
2  denied payment of benefits under their policies.

### IX.   SECOND CAUSE OF ACTION

**FOR DECLARATORY JUDGMENT OR RELIEF (FEDERAL DECLARATORY JUDGMENT ACT – 28 U.S.C. §§ 2201, *ET SEQ.*)**

**(By Plaintiff, individually and on Behalf of the Class and Sub-Class)**

60.   Plaintiff incorporates by reference each and every allegation contained above.

61.   Under federal law, "[i]n a case of actual controversy within its jurisdiction, … any court of the United States … may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment and shall be reviewable as such."  (28 U.S.C. 2201; Fed. Rule Civ. Proc., Rule 57).

62.   Here, an actual controversy has arisen and now exists between Plaintiff and Defendant within this Court's jurisdiction concerning the parties' respective rights, duties, and legal relations under the California Insurance Code and the Policy. Plaintiff contends Sections 10113.71 and 10113.72 apply to the Subject Policy and all of Defendant' California life insurance policies in force as of or after January 1, 2013, including any policies that were renewed in California on or after January 1, 2013.  Plaintiff also contends these Statutes govern the manner and procedure in which life insurance policies can legally be lapsed or terminated as of January 1, 2013, and thereafter.   Defendant contends and acts as if Sections 10113.71 and 10113.72 do not apply to many categories of their policies, such as Plaintiff's Policy.

63.   Plaintiff hereby seeks a judicial determination of rights and duties, and a declaration or judgment that Sections 10113.71 and 10113.72 applied as of January 1, 2013, to Defendant's California policies in force as of or at any time after January 1, 2013, including Plaintiff's Policy.

64.    A judicial declaration would advise insureds and their beneficiaries like Plaintiff of their rights, and would advise Defendant of its duties to Plaintiff and to Class members concerning policyholders' rights to designate individuals to receive notices of pending lapse and termination and the right to receive notice of, and the ability to properly utilize, the legally required grace period.  A judicial declaration is also necessary to determine the validity of any unnecessary reinstatements obtained, to determine whether policies were legally in force at the times of deaths of insureds, and to determine whether beneficiaries were wrongfully denied payment of benefits under their policies.

## X.    THIRD CAUSE OF ACTION
## BREACH OF CONTRACT

**(By Plaintiff, Individually and on Behalf of the Class and Sub-Class)**

65.    Plaintiff incorporates by reference each and every allegation contained above.

66.    Defendant breached and continues to breach the express terms of its life insurance policies, including Plaintiff's Policy, as well as the statutory mandates regarding such policies, by, amongst other things:

(a)    Failing to include in such policies and failing to provide a 60-day grace period for purposes of payment of premiums and lapse and termination of coverage for nonpayment of premium;

(b)    Lapsing and/or Terminating policies before expiration of the 60-day grace period;

(c)    Failing to include in such policies and failing to provide accurate 30-day written notice of pending lapse or termination;

(d)    Failing to provide proper notice to policyholders on an annual basis of the policyholders' right to designate individuals to receive notices of pending lapse or termination;

(e)      Lapsing or terminating policies without strictly complying with the terms of the policies;

(f)      Refusing to pay benefits to beneficiaries, despite knowledge and information that Defendant had not strictly complied with the terms of the policies;

(g)      Improperly requiring reinstatement of policies that had not lapsed or terminated and which were not required or were not subject to reinstatement;

(h)      By failing to pay benefits or claims;

(i)      By failing to provide the notices required by the policy; and

(j)      By failing to apply the applicable law to the insurance contract.

67.      Under the terms of this Policy and consistent with laws of California, Plaintiff was entitled to sufficient written notice and sufficient grace periods prior to the effectuation of any lapse or termination for non-payment.  Colonial Penn sent no such notice and provided no such grace periods and, thus, breached the insurance contract by failing to provide these mandatory protections.

68.      All the aforementioned conduct, individually and collectively, constitutes material unexcused breaches of the policies.  To the extent any contractual obligations, duties, or conditions are imposed on policyholders or on beneficiaries, those obligations, duties, and conditions have been waived and/or have been excused due to Defendant's material breaches. After each material breach, each policy owner was thus excused from the further tendering of premiums and from any further performance under the terms of the policy, including but not limited to the acceptance of any offer by Colonial Penn of any reinstatement or modification to the policy.

69.      Defendant's conduct caused injury upon the false, wrongful and inadequate termination of coverage devaluing the policy and subsequently caused injury in fact through the further denial of an ability to resume coverage, and ultimately in refusing to pay the claim.  Plaintiff and her fellow class members suffered harm through the loss of coverage, the loss of peace of mind related to the

existence of coverage, and the capacity to utilize the years of investment in the wrongfully lapsed and terminated policy.

70.     To the extent any policyholders and/or beneficiaries have failed to comply with any payment conditions or other conditions for the continuation of insurance, Defendant is estopped to assert such conditions due to their conduct and material breaches.  Yet, Defendant has done so with respect to Plaintiff and members of the Class and sub-class.

71.     As a legal and proximate result of the conduct described herein, Plaintiff as well as the class and sub-class have suffered direct and foreseeable economic damages, including loss of policy coverages and benefits, in a nature and amount to be proven at the time of trial.

# XI.   FOURTH CAUSE OF ACTION

## UNFAIR COMPETITION (CALIFORNIA BUSINESS & PROFESSIONS CODE §§ 17200, *ET SEQ.*)

**(By Plaintiff, individually and as successor-in-interest to Danny K. Allen and on Behalf of the Class and Sub-Class)
(Against All Defendants)**

72.     Plaintiff incorporates by reference each and every allegation contained above.

73.     California Business and Professions Code Sections 17200, *et. seq.* ("UCL") prohibit any unlawful, unfair, deceptive, or fraudulent business practice.

74.     Defendant committed "unlawful" acts under the UCL by violating and continuing to violate Sections 10113.71 and 10113.72, including by failing to afford insureds, including Plaintiff, the requisite 60-day grace period and/or written 30-day notice prior to any lapse or termination, and further, an annual right to designate someone else to also receive notices of pending lapse or termination of coverage.

75.     Plaintiff's Policy as well as policies which have allegedly been lapsed and/or terminated are still in force and are payable or subject to continuation of insurance.  Because of Colonial Penn's violations of the California Insurance Code,

Colonial Penn's attempted terminations or lapses of policies like the Subject Policy were illegal and ineffective.  The policies, in other words, remain in force and subject to payment of the benefit. Colonial Penn's failure to comply with the statutory terms has not effectively terminated any policy, and Plaintiff and her fellow class members all remain in an ongoing valid contractual relationship with Colonial Penn.

76.   Colonial Penn's unlawful practices also included and continue to include Defendant's ongoing concealment that Sections 10113.71 and 10113.72 apply to a class or classes of life insurance in force on or after January 1st, 2013. Defendant continues to conceal and mislead the policyholders and beneficiaries of the existence of a right to a 30-day lapse warning, a right to a 60 day grace period, a right to an annual designation, as well as the provisions of these statutes that mandate strict compliance with these provisions before any effective lapse or termination occurs.  Defendant has failed and continues to fail to explain to the policyholders and beneficiaries that a life insurance policy in force on or after January 1st, 2013 cannot be effectively terminated until strict compliance with all provisions of the insurance provisions, and that without such strict compliance the policy remains in force.

77.   Moreover, Colonial Penn has committed deceptive acts under the UCL by affirmatively and erroneously telling class members, like Plaintiff, that their policies had grace periods of less than 60 days and/or that their policies have lapsed or terminated.  The truth is that the policies had grace periods of at least 60 days and the policies had *not* actually lapsed or terminated.

78.   The unlawful and unfair business practices described above have proximately caused harm and injuries to Plaintiff, the class, and to the general public in the form of lost money and property.  The losses include valuable coverage, policy benefits that Colonial Penn is withholding, as well as the premiums that it wrongfully collected.

79.   Pursuant to California's UCL, Plaintiff, the general public, and the members of the Class and sub-class are entitled to restitution of the money or property

acquired by Defendant by means of such business practices, in amounts yet unknown, but to be ascertained at trial.  Examples of this lost money acquired illegally by Defendant include un-refunded premiums, withheld benefits, and diminution of value of policies.

80.    Defendant continues to this day to ignore or otherwise violate The Statutes, continuing to rob owners and beneficiaries, like Plaintiff, of their lawfully-owned policies and benefits.  As such, and pursuant to California's UCL, Plaintiff and the members of the class and sub-class and the general public are also entitled to injunctive relief, including public injunctive relief, against Defendant's ongoing business practices.

81.    If Defendant is not enjoined from engaging in the unlawful business practices described above, Plaintiff, the class and sub-class, and the general public will be irreparably injured.

82.    Plaintiff, the general public, and the members of the class and sub-class have no plain, speedy, and adequate remedy at law.

83.    Plaintiff's success in this action will result in the enforcement of important rights affecting the public interest by conferring a significant benefit upon the general public. Private enforcement of these rights is necessary as no public agency has pursued enforcement and the interests Plaintiff seeks to protect are for the benefit of the general public.  Plaintiff is therefore entitled to an award of attorneys' fees and costs of suit pursuant to, among others, California's UCL, the Common Fund doctrine, the Public Benefit Doctrine, and California Code of Civil Procedure Section 1021.5.

## XII.    FIFTH CAUSE OF ACTION

### FINANCIAL ELDER ABUSE (CAL WELF. & INST. CODE § 15610.30)
### (By Plaintiff individually, and on Behalf of the Elder Abuse Sub-Class)

84.    Plaintiff incorporates by reference each and every allegation contained above.

85.     By way of its actions described above, Colonial Penn has taken, hidden, appropriated, obtained, or retained Plaintiff and her fellow sub-class members' money or property and/or assisted in the taking, hiding, appropriating, obtaining, or retaining of said money or property—namely, the life insurance policies which Colonial Penn improperly terminated as well as the benefits associated with those policies and which Colonial Penn has withheld and continues to withhold to this day.

86.     Plaintiff and the fellow sub-class members were each 65 or older at all relevant times, including at the time of Colonial Penn's purported termination of the subject policies as well as at the time Colonial Penn should have, but failed to, pay any policy benefits owed.

87.     Colonial Penn took, hid, appropriated, obtained, or retained this money or property for a wrongful use or with the intent to defraud Plaintiff and her fellow sub-class members.

88.     Colonial Penn knew or should have known that its conduct was likely to be harmful to Plaintiff and other sub-class members.

89.     As a direct result of Colonial Penn's actions, Plaintiff and her fellow sub-class members were harmed in an amount to be determined at trial.  Colonial Penn's conduct was a substantial factor in causing that harm.

90.     Plaintiff and all other members of the elder abuse sub-class, seek compensatory damages and all other remedies otherwise provided by law in an amount to be proven at trial, as well as reasonable attorney's fees and costs under California Welfare and Institutions Code Section 15657.5.

91.     Furthermore, Colonial Penn, in committing the acts described above, is guilty of recklessness, oppression, fraud, or malice in the commission of the financial abuse thereby entitling Plaintiff, and the sub-class to an award of punitive damages.

## XII.   PRAYER FOR RELIEF

Plaintiff prays for relief against Defendant as follows:

1.     For certification of this action as a class action;

1      2.    A declaration of Plaintiff's and the Class' and sub-class' rights pursuant

2  to the insurance policies issued by Defendant and a declaration that Defendant has

3  violated The Statutes;

4      3.    For an injunction to issue against Defendant stopping and remedying the

5  ongoing violation of The Statutes, including public injunctive relief;

6      4.    For economic damages according to proof where available;

7      5.    Fore restitution where available;

8      6.    For treble relief under Cal. Civ. Code § 3345;

9      7.    For interest where available;

10     8.    For attorneys' fees and all litigation costs and expenses where available;

11     9.    For such other and further relief as this Court deems just and proper.

12 **XIII.  DEMAND FOR JURY TRIAL**

13 Plaintiff hereby requests a trial by jury.

14 Respectfully submitted:

15 DATED:  April 9, 2020     **NICHOLAS & TOMASEVIC, LLP**

17 By:  */s/ Alex Tomasevic*
Craig M. Nicholas (SBN 178444)
Alex Tomasevic (SBN 245598)
Email: cnicholas@nicholaslaw.org
Email: atomasevic@nicholaslaw.org

20 **WINTERS & ASSOCIATES**
Jack B. Winters, Jr. (SBN 82998)
Georg M. Capielo (SBN 245491)
Sarah Ball (SBN 292337)
Email: jackbwinters@earthlink.net
Email: gcapielo@einsurelaw.com
Email: sball@einsurelaw.com

Attorneys for Plaintiff
THURMA J. KELLEY